UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROCKY HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 11 C 8967 |
| | ) | |
| JEWEL-OSCO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant Jewel-Osco's ("Jewel") motion for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

## BACKGROUND[1]

Jewel is a grocery retailer with stores in the Midwest, including several in Chicago, Illinois. Plaintiff Rocky Hunter ("Hunter"), an African-American male born on February 19, 1954, was hired in November 1982 as a part-time security officer at a Jewel location in Chicago. On October 3, 1998, Hunter achieved full-time employment status. His duties included monitoring the store for theft and deterring against robberies

---

[1] The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion or assertion unsupported by the evidence in the record. *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006).

and fires.  Hunter worked at several Chicago Jewel stores during his tenure with the company, which lasted until his discharge on November 18, 2010.

Jewel maintains an employee handbook entitled "The Jewel Food Stores Security/Loss Prevention Associate Policy Handbook" ("Handbook").  The Handbook contains several policies setting forth Jewel's standards for employee conduct.  Jewel's Equal Opportunity Policy ("EOP") declares that Jewel is

committed to hiring, promoting, and compensating its employees without regard to race, color, religion, sex, national origin, age, or disability.  The EOP further prohibits discrimination or harassment based on any of the identified characteristics.  Jewel also maintains a Drug & Alcohol Policy ("DAP"), its goal being to keep the work environment alcohol and drug-free.  The DAP provides for disciplinary measures in the event that an employee reports to work under the influence of drugs or alcohol: "Any Associate who reports to work under the influence of alcoholic beverages or narcotics shall be sent home, and upon a second occurrence, shall be subject to immediate termination of employment."  Hunter signed a Receipt and Acknowledgment form on December 7, 2007, certifying that he received, read, and understood the Handbook and the policies found therein.

### Events Leading to Hunter's Dismissal

Hunter's was a Jewel employee for over 27 years.  Although he received mostly positive annual performance evaluations, Jewel disciplined Hunter in some way a total

of thirty-one times between 1984 and November 10, 2010, for infractions including tardiness, absenteeism, poor job performance, and reporting to work while intoxicated. Jewel highlights four incidents between 1994 and November 2010 where Hunter was cited for misconduct. The first occurred on October 14, 1994, when Hunter was issued a Verbal Written Warning after his manager detected alcohol on his breath while on duty. Hunter was warned that a similar incident could result in further disciplinary action up to and including termination. Hunter refused to sign the disciplinary form. No further disciplinary action was taken against Hunter at that time.

Hunter was cited again on July 20, 2005 for using foul language on the sales floor and sleeping in a manager's office. Hunter was issued a Special Employee Performance Review ("Performance Review") and was suspended. Hunter was also warned that any similar incidents in the future may result in termination. Hunter signed the Performance Review. Although the Performance Review itself does not attribute Hunter's conduct to the consumption of drugs or alcohol, four Jewel employees elaborated in handwritten witness accounts, dated the day of the incident, that Hunter smelled of stale liquor, seemed disoriented, and was staggering around the store while wearing sunglasses.

On June 8, 2010, Hunter visited Doctor Shahida Ahmad ("Dr. Ahmad"), and complained of three blackout spells. Two of the blackout spells occurred after Hunter had drank alcohol. Dr. Ahmad's deposition testimony and notes documenting the

- 3 -

appointment indicate that she advised Hunter to stop drinking. Hunter denies that Dr. Ahmad made any such recommendation.

The third incident occurred on August 2, 2010. On that date, Frank Davis ("Davis"), a delivery driver, observed Hunter at work unable to walk in a straight line. Davis informed James Flowers ("Flowers"), a Jewel Loss Prevention Manager, who soon after observed Hunter have difficulty navigating through the Loss Prevention Office. Flowers reported Hunter's conduct to Jewel Store Director Steven Donson ("Donson") and asked Donson to be present when he interviewed Hunter. During the meeting, Flowers asked Hunter if he drank alcohol prior to reporting to work that day. Hunter denied doing so, but his slurred speech left Flowers with the opposite impression. Flowers informed Hunter that he would not be permitted to work that day, as he was in an unfit condition. Hunter left the premises immediately following the meeting.

Hunter went on vacation the following day and reported back to work on August 15, 2010, when Flowers re-interviewed Hunter regarding the August 2nd incident. Hunter told Flowers that he did not remember coming to work or being sent home. On August 16th, Hunter informed Jewel that he was checking himself in for inpatient treatment at the South Suburban Council on Alcoholism and Substance Abuse ("SSC"),

a rehabilitation facility that treated alcoholism.[2]  Hunter maintains that on August 21, 2010, Flowers called Hunter's home and spoke with his mother.  Flowers asked if she knew when Hunter would be returning to work so that he could generate the weekly work schedule.  Jewel denies that this conversation took place.  On August 24th, Hunter was transferred to the outpatient program.  Hunter claims that Flowers's phone call to his mother caused him to fear that he would lose his job if he did not return to work immediately.  Hunter also maintains that he felt pressured to leave the inpatient program because Flowers refused to disburse his pay check to his mother.  Upon Hunter's leaving the inpatient program, he signed documents pledging that he would remain drug and alcohol-free and that he would attend counseling sessions twice a week.  Jewel adjusted Hunter's work schedule to enable him to attend his outpatient counseling sessions.

Hunter returned to work on August 26, 2010.  He met with Flowers and Donson, who interviewed Hunter a third time regarding the August 2nd incident.  Hunter admitted that he had been drinking prior to arriving to work that day.  Flowers issued Hunter a Written Warning for reporting to work under the influence of alcohol and

---

[2] Hunter alleges in his 56.1 Statement of Undisputed Facts that he informed Flowers that the program was to last 28 days.  Nothing in the record supports Hunter's assertion.  We accordingly disregard it, as it is unsupported by the evidence in the record.  *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities.").

being unfit to work. Flowers warned Hunter that the next incident could result in his termination.

On August 30, 2010, Hunter visited Dr. Ahmad and informed her that he was drinking alcohol regularly. Dr. Ahmad's notes and testimony reflect that she advised Hunter to stop drinking alcohol and to join an alcoholics anonymous group to help cope with his alcoholism.[3]

The seeds of the fourth incident were planted on the evening of October 4, 2010, when Hunter attended a friend's dinner party and consumed alcohol. Hunter was scheduled to work at Jewel on the following day from 4 p.m. to midnight. During Hunter's shift, Store Director Shelia Whitiker ("Whitiker") noticed Hunter standing near the steps of her office. She greeted him with a "hello," to which Hunter replied, "hey baby!" Whitiker found this behavior unusual. She later observed Hunter walking awkwardly and not occupying his assigned station. She asked Loss Prevention Supervisors Phil Pierce ("Pierce") and Armand Crump ("Crump") to keep an eye on Hunter. A short time later, Pierce and Crump reported to Whitiker that Hunter appeared to be intoxicated, and that several other store employees also noticed Hunter's conduct.

---

[3] Jewel objects on hearsay grounds to the admission of evidence that Dr. Ahmad advised Hunter on his alcoholism. *See* Fed. R. Evid. 802. Because the evidence is based on Dr. Ahmad's statement while diagnosing and treating Hunter's ongoing medical condition, the statement falls within the medical exception to the hearsay rule. *See* Fed. R. Evid. 803(4). Jewel's objection is overruled.

Whitiker summoned Hunter to her office for a meeting. Hunter's speech was slurred, and he again called Whitiker "baby." Whitiker sent Hunter home. At approximately 5:45 p.m. that day, Hunter called Flowers and shouted that Whitiker and Crump prevented him from working. Hunter's speech was slurred during the conversation. On or about that same day, Hunter checked himself into the SSC inpatient program. He was discharged on November 3, 2010 after completing the 28-day inpatient program.

Hunter returned to work on November 4, 2010. He was interviewed by Paul Reddington ("Reddington"), Jewel's South Area Loss Prevention Manager, about the October 5th incident. Donson was also present during the interview. Hunter read from a prepared statement that he did not remember reporting to work on October 5, 2010 or being sent home, but that he did recall drinking the previous evening. At the conclusion of the interview, Jewel suspended Hunter pending further investigation into the October 5th incident. On November 17, 2010, Reddington terminated Hunter for reporting to work while intoxicated on October 5, 2010, and for repeated violations of Jewel's Drug & Alcohol Policy.

*Procedural History*

On November 29, 2010, Hunter cross-filed a discrimination charge against Jewel with the Illinois Department of Human Rights ("IDHR") and the Equal Employment

Opportunity Commission ("EEOC"), alleging that Jewel terminated his employment because of his race, age, and disability, and that Jewel unlawfully retaliated against him. The EEOC issued Hunter a Notice of Right to Sue letter on October 13, 2011. Hunter filed a pro se complaint on December 19, 2011, alleging that Jewel terminated his employment because of his race and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34; and his alleged disability, alcoholism, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Hunter additionally alleges that Jewel failed to accommodate his alleged disability under the ADA. Finally, Hunter claims that Jewel retaliated against him in violation of Title VII, 42 U.S.C. § 2000e-3, when it terminated his employment.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). In considering a motion for summary judgment, a court construes all facts and

draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2010).

## DISCUSSION

### I.    The Parties' Objections to Admission of Evidence

#### A.    Hunter's Objection to Admission of Affidavits

Jewel's Local Rule 56.1 Statement of Undisputed Facts partly relies on affidavits submitted by Flowers, Donson, and Whitiker. Hunter objects to the admission of the affidavits, arguing that the Court should not consider evidence from an interested party. Hunter's objection is without merit, as he offers no evidence undermining the affiants' credibility in attesting to matters within their personal knowledge. *See Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) ("A motion for summary judgment cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit."). Hunter's objection is overruled.

#### B.    Jewel's Objection to Admission of Exhibits

Jewel objects to the admission of portions of Hunter's Exhibit 2, and all of Exhibit 8 on the grounds that these exhibits were never disclosed to Jewel despite being responsive to its discovery requests. Jewel fails to provide any support that it did not receive the exhibits in question. Jewel's objection is accordingly denied. Jewel further objects to statements made in Hunter's response to Jewel's summary judgment motion

and memorandum that are not supported with citations to the record. The Court denies Jewel's objection, but reiterates that statements unsupported by evidence in the record will be disregarded.

## II.    Race, Color, Age, and Disability Discrimination Claims

Jewel argues that the undisputed evidence demonstrates that it is entitled to judgment as a matter of law on each of Hunter's discrimination claims. Title VII prohibits an employer from terminating an employee on the basis of race or color. 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits employers from terminating an employee due to his age. 29 U.S.C. § 623. Lastly, the ADA forbids employers from discriminating against a "qualified individual" because of a disability. 42 U.S.C. § 12112.

Under Title VII, the ADEA, and the ADA, a plaintiff may establish his discrimination claims by either the direct or indirect methods of proof. *Casna v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). The direct method requires a plaintiff to offer direct or circumstantial evidence that an employer's decision to terminate an employee was motivated by his race, color, age, or disability. *Peele*, 288 F.3d at 326. A decision-maker's admission that the employee was discharged based on discriminatory intent suffices to establish direct evidence of employment discrimination. *Caskey v. Colgate-*

*Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Circumstantial evidence is made up of the three categories:

> (1) suspicious timing, ambiguous oral or written statements or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (citation and quotation omitted). A plaintiff must present circumstantial evidence that "points directly to a discriminatory reason for the employer's action." *Id.*

Jewel contends that it terminated Hunter's employment solely for his failure to abide by Jewel's Drug & Alcohol Policy and for repeatedly reporting to work in an unfit condition. Jewel submits uncontested evidence, in the form of written reprimands and Reddington's affidavit, demonstrating that Hunter repeatedly reported to work while intoxicated. No evidence in the record – either by admission or suspicious circumstances suggesting "discrimination through a longer chain of inferences" – indicates that Reddington or any other Jewel decision-maker fired Hunter for discriminatory motives. *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006).

Hunter attempts to establish discrimination with newspaper articles reporting on a 2009 lawsuit and settlement between Jewel and the EEOC. This amounts to little

more than a conclusory allegation of discrimination, as nothing in the articles constitutes direct or circumstantial evidence that Hunter was fired for discriminatory motives. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 393-94 (7th Cir. 2010) (holding that plaintiff's unsupported assertions that co-workers were treated more favorably is not sufficient to establish discrimination under the direct method of proof). Because no direct or circumstantial evidence in the record suggests that Jewel or any of its decision-makers acted with discriminatory intent, Hunter must establish his claims via the indirect method of proof to survive summary judgment.

To establish a prima facie case for discrimination based on race, color, or age under the indirect method of proof, a plaintiff must demonstrate that he: (1) is a member of a protected class; (2) was meeting the employer's legitimate performance expectations; (3) suffered an adverse action; and (4) was treated less favorably than similarly situated individuals who did not possess protected status. *Hobbs v. City of Chi.*, 573 F.3d 454, 461 (7th Cir. 2009). The elements remain the same under the indirect method for an ADA discrimination claim, except that the first prong is replaced with the requirement that the plaintiff demonstrate that he is "disabled" within the meaning of the ADA. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 548 (7th Cir. 2009) (citation omitted). A plaintiff must establish each element to avoid summary judgment in the defendant's favor. *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008); (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)). Establishing each

- 12 -

element creates a presumption of discrimination, which a defendant may rebut with evidence that the plaintiff was discharged for legitimate, noninvidious reasons. *Atanus*, 520 F.3d at 673 (citation omitted). If the defendant shows that the plaintiff's discharge was for legitimate reasons, the burden shifts back to the plaintiff, who must then establish that the defendant's stated reasons "are false and only a pretext for discrimination." *Id.*

Hunter fails to satisfy the second and fourth prongs of the indirect method of proof. When assessing whether an employee met his employer's legitimate performance expectations, the Court looks to whether the expectations were reasonable and in good faith, and if the employee's conduct met those expectations. *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000).

Hunter does not dispute the reasonableness of Jewel's policies. Thus, the only question that the Court must decide is whether his conduct met Jewel's standards. The DAP unequivocally warns Jewel employees of the consequences of reporting to work while intoxicated: "Any Associate who reports to work under the influence of alcoholic beverages or narcotics shall be sent home, and upon a second occurrence, shall be subject to termination of employment." Hunter was cited on four separate occasions between 1994 and November of 2010 for reporting to work while under the influence of alcohol. Jewel submits affidavits, employment records, and Hunter's own testimony which corroborate each of the four incidents. An employee's failure to meet an

- 13 -

employer's reasonable drug and alcohol policy constitutes a breach of an employer's legitimate performance expectations. *See Young v. Chi. Transit Auth.*, 189 F. Supp.2d 780, 794-95 (N.D. Ill. 2002) (granting defendant's motion for summary judgment and finding that the plaintiff was not meeting the defendant's legitimate performance expectations because she violated the defendant's drug and alcohol policy). Hunter repeatedly violating the DAP leads the Court to conclude that he did not meet Jewel's legitimate expectations.

Hunter asserts that the evidence demonstrating that he came to work while intoxicated is fabricated. Hunter fails to support this allegation with any evidence sufficient to create a dispute of fact as to the evidence's veracity. Jewel's facts pertinent to Hunter's performance therefore remain uncontested. Hunter also argues that he met Jewel's legitimate expectations, as made evident by his mostly positive annual performance reviews from 1983 through 2007. However, annual performance reviews are not sufficient to establish that Hunter was meeting Jewel's expectations, since "what matters is whether [plaintiff] was meeting his employer's expectations *at the time of his discharge*." *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 401 (7th Cir. 1992) (emphasis in original). The undisputed evidence shows that Hunter was not meeting Jewel's expectations at the time of his firing.

Even if we were to find that Hunter met Jewel's legitimate performance expectations, Hunter makes no attempt to show that he was treated less favorably than similarly situated employees outside of his protected classes, *i.e.*, employees who are not African-American, disabled, or over the age of 40. When a plaintiff claims that he was disciplined by his employer more harshly than similarly situated employees, the complainant must show that "he is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000) (citation omitted).

Nothing in the record suggests that Jewel treated Hunter worse than other similarly situated security officers. Hunter concedes in his deposition and brief that he has no knowledge of being treated differently from similarly situated employees. Hunter's claim cannot overcome his failure to demonstrate differential treatment among similarly situated employees. The Court finds that the evidence does not show that Jewel treated Hunter differently than non-African-American, non-disabled, non-aged security officers. Hunter therefore fails to establish a prima facie case for discrimination under the indirect method of proof.

Because there is no genuine issue of material fact as to Hunter's failure to meet Jewel's legitimate performance expectations and his treatment relative to similarly situated employees, we need not consider the remaining elements of Hunter's prima

facie case. Jewel's motion for summary judgment as to each of Hunter's discrimination claims is granted.

## III. Retaliation Claim

Jewel seeks summary judgment on Hunter's retaliation claim. Title VII forbids employers from discriminating against an employee for opposing a practice prohibited by Title VII, or for participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a) (the "anti-retaliation statute"). The gravamen behind the anti-retaliation statute is to protect victims of discrimination who complain about discrimination to the EEOC, the courts, or the employer itself. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citations omitted).

A plaintiff may establish a claim for unlawful retaliation by the direct or indirect method of proof. *Id.* A plaintiff establishes a prima facie retaliation claim under the direct method by demonstrating that he: (1) engaged in a statutorily protected activity; (2) suffered a materially adverse employment action; and (3) demonstrates a causal connection between the two. *Id.* The indirect method calls for the plaintiff to establish the first two prongs of the direct method, plus a showing that he performed his job satisfactorily but was treated less favorably than similarly situated employees who did not complain of discrimination. *Id.* at 786-87. If the plaintiff satisfies his initial burden under the indirect method, the defendant must articulate a legitimate, nondiscriminatory

reason for its actions. *Id.* at 787. If the defendant does this, the burden shifts back to the plaintiff, who must show that the defendant's stated reason is a pretext to a discriminatory motive. *Id.*

Hunter's failure to provide evidence that he engaged in statutorily protected activity is fatal to his retaliation claim under either method of proof. Hunter admits in his deposition and his brief that he never complained of being discriminated against prior to his discharge. The record reveals that he first made his feelings known when he filed a charge of discrimination with the EEOC and IDHR on November 29, 2010, twelve days after he was fired. Finding that an emlpoyee engaged in statutorily protected activity presumes that the employee complained about his treatment, and that the complaint led to his dismissal. *See Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003) (Title VII prohibits retaliation for complaints about discrimination). Nothing in the record indicates that Jewel was aware that Hunter had complained of discrimination until after his firing. It therefore had nothing to retaliate against.

Hunter meanwhile asserts that Jewel retaliated against him when (1) Flowers allegedly spoke with Hunter's mother to inquire into his return date during his first stint in inpatient treatment, and (2) when Flowers refused to give Hunter's pay check to his mother at the same time. Even accepting Hunter's allegations in a light most favorable

- 17 -

to him does not cure the fact that Jewel had no knowledge that he felt targeted because of his age, race, color, or alleged disability.

Because the record lacks any evidence that Hunter engaged in any activity protected by Title VII, he fails to establish a prima facie case for retaliation. Jewel's motion for summary judgment as to Hunter's retaliation claim is granted.

## CONCLUSION

For the foregoing reasons, Jewel's motion for summary judgment is granted.


_____/s/  Charles P. Kocoras_____
Charles P. Kocoras
United States District Judge

Dated:   __January 3, 2013___